195647.5

Eli Feit (EF-3530)
Stuart A. Blander (SB-2510)
Amy Mosery (AM- 1478)
HELLER, HOROWITZ & FEIT, P.C.
292 Madison Avenue
New York, New York 10017
(212) 685-7600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK
------------------------------------X

LINDA K. FRIEDMAN,

                Plaintiff,

-against-

NEW YORK INSTITUTE OF TECHNOLOGY,
NEW YORK COLLEGE OF OSTEOPATHIC
MEDICINE and BRIAN HALLAS,

                Defendants.
------------------------------------X

Case No.: 13-cv-2743 (JS)(GRB)

*AMENDED COMPLAINT*

*Jury Trial Demanded*

Plaintiff, Linda K. Friedman, by her attorneys, Heller, Horowitz & Feit, P.C., for her Amended Complaint in this action, alleges as follows:

### *JURISDICTION AND VENUE*

1. The Court has original jurisdiction over this matter pursuant to Section 706(f)(3) of Title VII, 41 USC § 2000e-5(f)(3) and 28 U.S.C. §§ 1331.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events and occurrences giving rise to this action occurred within this judicial district.

### *PARTIES*

3. Plaintiff Linda K. Friedman ("Dr. Friedman") is a citizen of the state of New York, residing at 1042 Furth Road, Valley Stream, New York 11581

1

195647.5

4.     Defendant New York Institute of Technology ("NYIT") was, at all relevant times, is a fully accredited institution of higher education licensed under the State of New York with an address at Rt 25A, Old Westbury, New York 11568. NYIT has three campuses in New York State. NYIT is a "person" as defined by Title VII and the New York State Executive Law; NYIT is also an employer as defined by Title VII.

5.     Defendant New York College of Osteopathic Medicine ("NYCOM") was, at all relevant times, a fully accredited institution of higher education licensed under the State of New York with an address at Rt 25A, Old Westbury, New York 11568. NYCOM has three campuses in New York State. NYCOM is a "person" as defined by Title VII and the New York State Executive Law; NYCOM is also an employer as defined by Title VII. Upon information and belief, NYCOM is a division of NYIT.

6.     Defendant Dr. Brian Hallas ("Dr. Hallas") resides at 1 Carpenter Lane, Levittown, New York, 11756-5208. At all times relevant to this complaint, Dr. Hallas was an employee of NYIT and/or NYCOM, and held the position of Research Dean and was Plaintiff Dr. Linda Friedman's immediate supervisor while she was employed at NYIT/NYCOM. Dr. Hallas had the authority and power to recommend the termination of subordinates such as Dr. Friedman and to supervise and control their work schedules and conditions of employment; and had the power to impute his animus and retaliatory intent against Dr. Friedman to the purported "neutral decision makers" who ultimately decided not to renew Dr. Friedman's employment contract.

### *ADMINISTRATIVE REMEDIES*

7.     Plaintiff timely filed a charge of discrimination against the Defendants NYIT, NYCOM and Hallas with the United States Department of Education, Office for Civil Rights

195647.5

("DOE"). DOE then referred the charge to the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter to the Plaintiff dated February 12, 2012. The DOE filing was made within 300 days of the final adverse employment action, which was the May 15, 2012 Letter upholding the recommendation not to renew Dr. Friedman's employment contract, as alleged in greater detail below. The DOE filing was also made within 60 days of the completion of the Defendants' institutional grievance process, and is therefore timely under the rules of the DOE Office for Civil Rights.

## *PRELIMINARY STATEMENT*

8.  Dr. Friedman is a highly respected, published research scientist, lecturer and educator. She served as an Associate Professor of Neuroscience at NYCOM/NYIT from 2005 to 2012. Dr. Friedman is also married to a Rabbi, and is an observer of the Jewish Sabbath. Dr. Friedman was at all times relevant to this complaint, a full-time employee of Defendant New York Institute of Technology.

9.  Neither her sterling credentials, experience, religious conviction nor vociferous objections shielded Dr. Friedman from being relentlessly sexually harassed by her immediate supervisor, Dr. Brian Hallas. After rebuffing his unwanted advances, Dr. Friedman was then the subject of a brutal and vindictive campaign of retaliation led by Dr. Hallas and endorsed by NYIT/NYCOM, which ultimately resulted in her termination from NYIT/NYCOM, leaving her reputation in tatters and her emotional health in severe distress.

## *STATEMENT OF FACTS*

10. Dr. Friedman received her Bachelor of Science from the University of Louisville in 1980, her Master of Science from Queens College in 1983 and her PhD from the City

195647.5

University of New York in 1988. In March 2005, Dr. Friedman was hired by NYCOM, one of several institutions of higher learning affiliated with and under the auspices of the NYIT, as a full-time NYIT/NYCOM faculty member. Previously, she had served as Adjunct Professor of Biology at Seton Hall University in South Orange, New Jersey; Associate Professor at JFK Medical Center, Neuroscience Institute in Edison, New Jersey; Instructor at Albert Einstein College of Medicine, Yeshiva University, Department of Neuroscience, New York, New York; a Postdoctoral Fellow at SUNY Downstate Medical Center, Department of Cell Biology & Anatomy, Brooklyn, New York; and Undergraduate Research Fellow at the University of Louisville, Kentucky.

11. For the first several years of her tenure at NYIT/NYCOM, Dr. Friedman enjoyed her work there and thrived. While at NYIT/NYCOM, Dr. Friedman enjoyed academic and professional success and has achieved international renown on account of her research into the causes of epilepsy. She has published numerous articles in high-impact publications, peer-reviewed papers, and has presented and lectured all over the world. She has received numerous awards and accolades for her work, and has been the recipient of numerous private and public grants, honoraria and stipends. Dr. Friedman was highly regarded amongst her students, and her lectures were well attended and highly popular. Dr. Friedman was highly sought after to collaborate with. While at NYIT/NYCOM, Dr. Friedman was supervised by Dr. Hallas, who served as Research Dean and Chair of the Neuroscience Department.

**Dr. Hallas' Sexual Harassment of Dr. Friedman**

12. While, initially, Dr. Friedman and Dr. Hallas enjoyed a close professional relationship, Dr. Hallas apparently decided, beginning in late 2009, to take it to a different level.

4

195647.5

Dr. Hallas never made a secret of his attraction to Dr. Friedman, who is married. In October 2009, during a private conversation with Dr. Friedman, Dr. Hallas asked her to have sex with him. Dr. Friedman rejected this advance, but Dr. Hallas did not take no for an answer. He repeated this overture several more times over the years following, and Dr. Friedman rejected him each time. Aside from requesting sex from Dr. Friedman, Dr. Hallas repeatedly uttered lewd comments and engaged in unwelcome physical contact with her. While discussing a potential business opportunity, Dr. Hallas asked Dr. Friedman if he could see her naked. Often, in the company of others at social functions, Dr. Hallas would tell Dr. Friedman that she is "beautiful" and "sexy" and that they should get married. Dr. Friedman is married. These proclamations would often be accompanied by unwelcome touching, such as his putting an arm around her and squeezing her closely to him. Most recently, at the NYIT/NYCOM scholars reception of April 2011, Dr. Hallas pulled Dr. Friedman close to him and brushed his erect penis against her during photographs. She quickly moved away from him as soon as the photographs concluded.

**Dr. Hallas' Initial Retaliatory Campaign**

13. Finally, Dr. Hallas got the message from Dr. Friedman that no meant no. Dr. Hallas, furious that Dr. Friedman rejected him, and aided and abetted by NYIT/NYCOM, began an unrelenting retaliatory campaign against Dr. Friedman, because she had the audacity to say no to his unwelcome advances. Dr. Hallas was enraged and infuriated by Dr. Friedman's rejection of him and launched a vicious retaliatory campaign against her. There were several witnesses to the acts of sexual harassment and the retaliatory termination suffered by Dr. Friedman.

14. That initial retaliatory campaign included, but was not limited to:

195647.5

    a.    Dr. Hallas' repeatedly and falsely reporting to his supervisor Dean Thomas Scandalis, Research Dean Kurtis Amlser, Vice President Barbara Ross-Lee and others that Dr. Friedman was not productive and was insufficient in her teaching;

    b.    Dr. Hallas' following up that criticism with nasty, accusatory and false emails to Dr. Friedman and to others about Dr. Friedman;

    c.    Dr. Hallas' falsely reporting to the Reappointment and Promotions Committee ("RPC") that Dr. Friedman was not invited back to the American Osteopathic Association 2010 convention and that she published in low-impact journals and that she was escorted out of a scientific meeting;

    d.    Dr. Hallas' repeatedly threatening to fire Dr. Friedman and telling her that if she did not let students put their name on her work she would be fired, forcing her to allow students to plagiarize her work or risk losing her job;

    e.    Dr. Hallas' removing Dr. Friedman's name from her work and replacing it with his own name and that of other students in order to misrepresent the material as not having been authored by Dr. Friedman, without Dr. Friedman's knowledge or approval;

    f.    Dr. Hallas' trying to force Dr. Friedman to sign a letter of resignation if she did not write three NIH grants within six months, something that no other employee was required to do;

    g.    Dr. Hallas' refusing to sign off on any of Dr. Friedman's grant proposals, including a substantial grant from GlaxoSmithKline, the kiss of death for a research scientist who is dependent upon grants;

6

195647.5

    h.    Dr. Hallas' suddenly advising Dr. Friedman that she could no longer make up the days she had taken off for Jewish holidays and for the Sabbath and would then have to use her vacation days to make up for the lost time, something no other faculty member was required to do. Dr. Hallas and NYCOM had previously accommodated Dr. Friedman's religious practices;

    i.    Dr. Hallas' singling out and telling Dr. Friedman that NYCOM would no longer be paying her travel expenses and other fees to attend conferences and symposiums, although he and the school continued to sign off on the same fees and expenses for other faculty members;

    j.    Dr. Hallas' telling Dr. Friedman that she was no longer permitted to give lectures or work with any students, while no other faculty member was similarly advised;

    k.    Dr. Hallas' telling Dr. Friedman that she could no longer collaborate with other faculty members or scientists, while no other faculty member was similarly advised;

    l.    Dr. Hallas' telling Dr. Friedman that students were no longer permitted to work in the laboratory without her being in the lab, whereas all other faculty members were permitted to have students work on their experiments when they were not in the lab.

    m.    Dr. Hallas' informing Dr. Friedman that she could not speak to anyone about obtaining insurance for her summer intern from Barnard who was scheduled, with the prior consent and full knowledge of Dr. Brian Hallas to work in the laboratory over the summer with Dr. Friedman.

195647.5

**Dr. Friedman's Futile Complaints to NYCOM Officials**

15. Throughout this ordeal, Dr. Friedman made repeated requests to Dean Scandalis, to Barbara Ross-Lee, to Dr. Kurt Amlser and two other employees at NYCOM for assistance and help with the horrific and rapidly deteriorating situation and Dr. Hallas' vindictive behavior. However, no such assistance was forthcoming and Dr. Friedman was left to fend for herself.

**The Retaliatory Decision Not to Reappoint Dr. Friedman**

16. In or about July 2011, Dr. Friedman was informed by Dr. Barbara Ross-Lee and Dean Thomas Scandalis based upon a purported February 2011 decision of the Faculty Reappointment and Promotion Committee ("RPC"), she would not be reappointed and that her contract would expire a year after that, in August 2012.

17. Upon information and belief, the decisions and recommendations of the RPC, Dr. Ross-Lee and Dean Scandalis were in substantial part the product of the influence of Dr. Hallas over these individuals and entity, who successfully imputed his discriminatory and retaliatory animus towards Dr. Friedman, and caused them to give effect to and implement his agenda.

18. Pursuant to the NYCOM Faculty Handbook, the RPC makes a recommendation to the Dean "for review and appropriate action." Thereafter, "the Dean will then forward his/her recommendation to the Vice President for Health Sciences and Medical Affairs, who in turn will forward his/her recommendations to the President of NYCOM for final action." Thus, based upon the Faculty Handbook, it appears that no employment action is "final" until approved by the President.

19. Following receipt of the July 2011 notification, Dr. Friedman was initially advised by NYCOM that there was no procedure for contesting the recommendation not to renew her

195647.5

contract. Thereafter, acting pursuant to the instructions of NYCOM's authorized representatives, filed a "grievance" with respect to the recommended non-renewal of her contract. In response to that filing, and at the direction of Dean Scandalis and the findings of the Academic Senate Grievance Committee ("ASGC"), the RPC met "to re-evaluate Dr. Linda Friedman's application for reappointment." This process was subsequently characterized by NYCOM as RPC "mak[ing] a new determination regarding Dr. Friedman's reappointment . . ."

20. In a written decision dated May 15, 2012, which constituted the "new determination", the Chair of the Committee elected "to uphold the original recommendation of the RPC (February 2011) viz, that Dr. Linda Friedman be issued a one-year terminal contract." Upon information and belief, there has been no "final action" by the President of NYCOM with respect to Plaintiff's termination.

21. There was presented overwhelming evidence (i) implicating Dr. Hallas and NYIT/NYCOM in a discriminatory and retaliatory plot against Dr. Friedman; and (ii) confirming Dr. Friedman's merit and value as a faculty member. Nevertheless, the ASGC found against Dr. Friedman. Dean Patricia Chute advised Dr. Friedman that the ASGC's view was that Dr. Hallas had a problem with alcohol and that he was "not responsible for his actions." The clear implication being, therefore, that since Dr. Hallas was an alcoholic he should be free to sexually harass whomever he chose.

22. Defendants' decision not to reappoint Dr. Friedman was in retaliation for her complaints concerning and her opposition and refusal to submit to Dr. Hallas' repeated acts of sexual harassment.

9

195647.5

23. Following her termination, Plaintiff's professional options were extremely limited. She had already approached Dr. Hallas' immediate supervisor, Dean Scandalis, and advised him of Dr. Hallas' repeated acts of sexual harassment towards her and then approached him again about Dr. Hallas' unrelenting campaign of retaliation against her, and literally begged him to intervene, but he refused. Dr. Friedman approached Barbara Ross-Lee, the Vice President of Health and Medical Services and advised her of Dr. Hallas' acts of sexual harassment towards her and Dr. Hallas' unrelenting campaign of retaliation and begged her to intervene. She too refused. Dr. Friedman approached Dr. Kurt Almser, the Dean of Research, who had replaced Dr. Hallas, but he too refused to intervene. Thus, Dr. Hallas' abuse of Dr. Friedman continued, unabated up until Dr. Friedman's departure in August 2012.

24. In accord with NYCOM's procedures, Dr. Friedman also filed a complaint against Dr. Hallas with the NYIT/NYCOM Human Resources Department, but to no one's surprise, Human Resources did nothing to ameliorate the problem she was having with Dr. Hallas.

25. Dr. Friedman's reappointment was denied despite the overwhelming evidence that her termination was in retaliation for her refusal to have sex with Dr. Hallas and as punishment for her internal complaints about Dr. Hallas' conduct. At the same time other, far less qualified, faculty members were reappointed over Dr. Friedman.

26. Dr. Friedman, because of the sexual harassment by Dr. Hallas and the vicious subsequent retaliatory campaign by Dr. Hallas against her, which was fostered, aided and abetted by others at NYIT/NYCOM, became deeply emotionally distressed and suffered profound mental anguish.

195647.5

27. Moreover, because of the way she was eventually terminated by NYIT/NYCOM, Dr. Friedman was forced to accept a less prestigious and lower-paid temporary position, which position is totally dependent upon the grant from GlaxoSmithKline continuing.[1]

### FIRST CLAIM FOR RELIEF
### *(Gender Discrimination Under Title VII Against NYCOM and NYIT)*

28. Plaintiff repeats and realleges the allegation in paragraphs 1 through 27 of the Complaint.

29. This claim is brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, as amended ("Title VII"), for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender. Title VII specifically prohibits retaliation against an employee for her opposition to unlawful employment acts, such as sexual harassment.

30. Due to her gender, Dr. Friedman has been subjected to unwanted sexual harassment, subjected to a hostile work environment and discrete adverse and retaliatory actions, including but not limited to her termination as well as a series of discriminatory and retaliatory actions perpetrated against her by Defendants in a manner that would suggest it was either in retaliation for her complaints of discrimination, or resistance and objection to Dr. Hallas' sexual advances.

---

[1] Defendants were also extremely displeased with Dr. Friedman because of her complaints to her supervisors concerning certain animal research that was being conducted without the proper licenses. To the extent discovery will show that her termination was in whole or in part in retaliation for such complaints, plaintiff reserves the right to amend this Complaint to assert a claim under Section 740 of the New York Labor Law.

11

195647.5

31. The culmination of the discriminatory and retaliatory acts was the May 15, 2012 Letter that terminated Dr. Friedman's employment.

32. Accordingly, on account of the Defendants' discriminatory conduct, Dr. Friedman has suffered damages including (a) loss of past salary and other forms of compensation from July 2012 to date, together with interest, (b) loss of future earnings, (c) damage to her reputation in the scientific and academic community, and (d) pain and suffering, amounting to, in the aggregate, in excess of $5,000,000.

## SECOND CLAIM FOR RELIEF
### (Religious Discrimination Under Title VII Against NYCOM and NYIT)

33. Plaintiff repeats and realleges the allegation in paragraphs 1 through 32 of the Complaint.

34. This claim is brought pursuant to the provisions of Title VII for violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

35. Dr. Friedman was subject to discrimination on the basis of her religion, in that NYIT/NYCOM, in concert with Dr. Hallas, was unwilling to accommodate her observance of the Jewish Sabbath and Jewish Holidays. In addition, she was not permitted to count extra working hours on other non-working days to make up for the Jewish Holidays, which she observes and on which she does not work either.

36. Accordingly, on account of Defendants' discriminatory conduct, Dr. Friedman has suffered damage, in the amount of $2.5 million.

195647.5

## THIRD CLAIM FOR RELIEF
*(Gender Discrimination Under New York Law Against All Defendants)*

37. Plaintiff repeats and realleges the allegation in paragraphs 1 through 36 of the Complaint.

38. New York Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." That Section also prohibits an employer from retaliating against an employee for her opposition to any unlawful employment activities, such as sexual harassment.

39. As detailed above, Dr. Friedman was discriminated against based upon her gender. Such discrimination includes, but is not limited to, sexual harassment, being subjected to a hostile work environment and discrete adverse and retaliatory actions, including but not limited to, her termination as well as a series of discriminatory and retaliatory actions perpetrated against her by Defendants in a manner that would suggest it was either in retaliation for her complaints of discrimination, or resistance and objection to sexual advances.

40. The culmination of the discriminatory and retaliatory acts was the May 15, 2012 Letter that terminated Dr. Friedman's employment.

41. Accordingly, on account of the Defendants' discriminatory conduct, Dr. Friedman has suffered damages including (a) loss of past salary and other forms of compensation from July 2012 to date, together with interest, (b) loss of future earnings, (c) damage to her reputation in

13

195647.5

the scientific and academic community, and (d) pain and suffering, amounting to, in the aggregate, in excess of $5,000,000.

**FOURTH CLAIM FOR RELIEF**
*(Religious Discrimination Under New York Law Against All Defendants)*

42. Plaintiff repeats and realleges the allegation in paragraphs 1 through 41 of the Complaint.

43. This claim is brought pursuant to the provisions of the New York State Human Rights Law, N.Y. Exec. Law § 296 for violation of the prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

44. Dr. Friedman was subject to discrimination on the basis of her religion, in that NYIT/NYCOM, in concert with Dr. Hallas, was unwilling to accommodate her observance of the Jewish Sabbath. In addition, she not permitted to count extra working hours on other non-working days to make up for the Jewish Holidays, which she observes and on which she does not work either.

45. Accordingly, on account of Defendants' discriminatory conduct, Dr. Friedman has suffered damage, in the amount of $2.5 million.

**WHEREFORE**, Plaintiff Dr. Linda Friedman demands judgment against the Defendants as follows:

    a. Compensatory damages in the amount of $5 million;

    b. Punitive damages in the amount of $5 million;

    c. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

195647.5

  d. Directing Defendants to place Plaintiff in the position she would have occupied but for Defendant's retaliatory treatment of her, and to make her whole for all earnings she would have received but for defendant's retaliatory treatment, including but not limited to, wages, pension, interest, lost future earning potential, and other lost benefits;

  e. Awarding the Plaintiff a five (5) year renewal of her contract at NYIT on the same terms and conditions as identically situated faculty members and allow the Plaintiff to freely observe the Jewish Sabbath and Holidays; and

  f. For such other and further relief as this Court deems just and proper.

## *DEMAND FOR A TRIAL BY JURY*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues in her action.

Dated: New York, New York
       July 26, 2013

                                     HELLER, HOROWITZ & FEIT, PC

                                     BY: _____
                                     Stuart A. Blander (SB-2510)
                                     Eli Feit (EF-3530)
                                     Amy Mosery (AM-1478)
                                     292 Madison Avenue
                                     New York, New York 10017
                                     (212) 685-7600

                                     *Attorneys for Plaintiff*
                                     *Linda K. Friedman*